Filed 7/17/24  P. v. McConnell CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RONNIE McCONNELL,<br><br>    Defendant and Appellant. | B330776<br><br>(Los Angeles County<br>Super. Ct. No. NA088369) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Tomson T. Ong, Judge.  Reversed and remanded with directions.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

Ronnie McConnell appeals the judgment entered following a resentencing hearing pursuant to Penal Code[1] section 1172.75. Appellant challenges the trial court's refusal under section 1385 to dismiss a firearm enhancement imposed under section 12022.53, subdivision (d), and to strike a prior serious felony conviction for purposes of imposition of two five-year enhancements under section 667, subdivision (a)(1). Specifically, appellant contends the trial court erred and abused its discretion in failing to consider the mitigating circumstances which weighed strongly in favor of dismissal of these enhancements and by making no finding that dismissal would endanger public safety. We agree. We therefore vacate the sentence and remand to the trial court for resentencing under section 1385, subdivision (c)(2).

## BACKGROUND[2]

On January 18, 2011, around 9:00 p.m., Maurice Harrison and Darrel Mitchell were walking on South Street in the City of Long Beach. As they passed a Ford Taurus parked in front of a driveway, the driver emerged from the vehicle holding a shotgun. Appellant got out of the front passenger seat of the Taurus and looked Mitchell "straight" in the face. Mitchell continued walking and heard someone ask, "Where you from?" He turned around to see if Harrison was talking to someone and immediately heard a shotgun blast. Mitchell ran down the street chased by appellant and was shot in the back. He suffered a "through-and-through"

---

[1] Undesignated statutory references are to the Penal Code.

[2] The following facts are drawn from this court's unpublished decision in appellant's direct appeal from his conviction. (*People v. McConnell* (July 18, 2013, B243017) [nonpub. opn.] (*McConnell*).)

2

gunshot wound consistent with the type of wound produced by a handgun.  (*McConnell*, *supra*, B243017.)

In the meantime, Harrison heard someone say, "Where you from, cuz?" which he understood to mean he was being asked what gang he was from.  When he heard the shotgun blast he started running back in the direction from which he had come and was struck in the back by shotgun pellets.  Harrison hid behind a tree and looked back to the Taurus where he saw a person near the driver's side pointing a shotgun at him.  Another shotgun blast struck Harrison in the arm.  He ran toward a fence to escape and was hit by a third blast that knocked him through the fence.  He managed to crawl away and eventually made his way to safety.  (*McConnell*, *supra*, B243017.)

After the shooting appellant returned to the Taurus whereupon he and the other shooter drove away.  (*McConnell*, *supra*, B243017.)

Harrison suffered 15 shotgun pellet wounds to his back and several more to his left arm.  The prosecution firearms expert opined that three expended shotgun casings recovered from the scene were fired from a shotgun found in appellant's garage. (*McConnell*, *supra*, B243017.)

Appellant was convicted by a jury of two counts of attempted murder (§§ 664/187, subd. (a)) with true findings on the allegations of personal use of a firearm (§ 12022.5, subd. (a)) and personal discharge of a firearm causing great bodily injury (§ 12022.53, subds. (c) & (d)).  Appellant admitted the prior strike (§§ 1170.12, subd. (a)–(d), 667, subd. (b)–(i)), prior prison term (§ 667.5, subd. (b)), and prior serious felony allegations (§ 667, subd. (a)(1)).  The trial court sentenced him to an aggregate term of 53 years to life plus 22 years, as follows:

3

Count 1 (attempted murder of Harrison)—seven years to life, doubled for the strike to 14 years to life, plus 10 years for the section 12022.5 firearm enhancement, plus five years for the prior serious felony enhancement (§ 667, subd. (a)(1)), plus one year for the prior prison term enhancement (§ 667.5, subd. (b));

Count 2 (attempted murder of Mitchell)—seven years to life, doubled for the strike to 14 years to life, plus 25 years to life for the section 12022.53, subdivision (d) firearm enhancement, plus five years for the prior serious felony enhancement (§ 667, subd. (a)(1)), plus one year for the prior prison term enhancement (§ 667.5, subd. (b)), to run consecutive to the sentence on count 1.

At resentencing pursuant to section 1172.75 on May 22, 2023, the trial court recalled appellant's sentence, struck the two prior prison term enhancements, and modified the firearm enhancement under section 12022.5, subdivision (a) to the midterm of four years instead of the originally imposed upper term of 10 years. Declining to dismiss or impose a lesser firearm enhancement under section 12022.53, subdivision (b) or (c), or to strike the five-year enhancement under section 667, subdivision (a)(1), the trial court sentenced appellant to 53 years to life plus 14 years.

## DISCUSSION

### I. Appellant Did Not Forfeit His Challenge to the Trial Court's Ruling

As a preliminary matter, we reject respondent's contention that appellant forfeited his argument that the trial court abused its discretion in failing to consider or make explicit findings on the applicable mitigating circumstances enumerated in section 1385, subdivision (c)(2), and by making no specific findings as to

4

whether dismissal of any enhancements would endanger public safety.

In his motion for full resentencing, appellant argued that as amended by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1), section 1385, subdivision (c)(2) requires the trial court to " 'consider *and afford great weight*' " to enumerated mitigating circumstances in determining whether to dismiss an enhancement, and that "proof of the presence of one or more of these circumstances '*weighs greatly in favor of dismissing the enhancement*,' unless the court finds that dismissal of the enhancement would endanger public safety." Applying the relevant mitigating factors to the instant case, appellant argued that the firearm and prior serious felony enhancements should be dismissed under section 1385 in the interests of justice.

We conclude these and other arguments in appellant's motion were sufficient to preserve the issues for appeal that he now raises. Moreover, because appellant had specifically argued in the motion that the trial court was required to give great weight to the mitigating circumstances enumerated in section 1385, subdivision (c)(2), in the face of the trial court's unequivocal ruling, we find any objection at the hearing would have been futile. (See *People v. Brown* (2003) 31 Cal.4th 518, 547 [trial court's "sufficiently definite and express ruling" on a motion may preserve claim for appeal; *People v. Anderson* (2001) 25 Cal.4th 543, 587 ["Counsel is not required to proffer futile objections"].)

II. **The Trial Court Abused Its Discretion by Making No Finding that Dismissal of the Enhancements Would Endanger Public Safety, and Then Failing to Consider Any of the Mitigating Circumstances Under Section 1385, subdivision (c)(2)**

A. *Relevant background*

After the California Department of Corrections and Rehabilitation (CDCR) notified the superior court that appellant's sentence contained a now-invalid prior prison term enhancement under Senate Bill No. 483 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 728, § 3), the court appointed counsel and set the matter for a resentencing hearing pursuant to section 1172.75. Prior to the hearing, appellant filed a motion for full resentencing in which he requested that the court resentence him to 10 years to life.[3] Appellant argued that several ameliorative changes in the law gave the court new discretion to significantly reduce his sentence:

_____

[3] In addition to striking the two one-year prior prison terms enhancements originally imposed under section 667.5, subdivision (b), appellant asked the court to strike the prior serious felony enhancements and the prior strike conviction, and resentence him as follows:  on count 1, seven years to life for attempted premeditated murder, plus three years for the true finding on the gun use enhancement under section 12022.5, subdivision (a), and a concurrent sentence on count 2 of seven years to life plus three years for the gun use enhancement pursuant to section 12022.5, subdivision (a) instead of the 25 years to life firearm enhancement under section 12022.53, subdivision (d).

6

— Senate Bill No. 81, amending section 1385, granted the court discretion to dismiss an enhancement or its punishment after giving "great weight" to the mitigating circumstances enumerated in subdivision (c), unless the court finds dismissal would endanger public safety;

— Senate Bill No. 620 (2017–2018 Reg. Sess.) (Stats. 2017, ch. 682, §§ 1 & 2), amending sections 12022.5 and 12022.53, gave the court discretion to strike personal gun use enhancements; and

— Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1013, § 2) gave the court discretion to strike the five-year prior serious felony conviction enhancement under section 667, subdivision (a)(1).

Appellant identified several mitigating circumstances, which, he argued, weighed greatly in favor of dismissal or reduction of the enhancements " 'in furtherance of justice' " under the new sentencing regime. These included the circumstances that (1) multiple enhancements were applied in appellant's case (§ 1385, subd. (c)(2)(B)); (2) the application of these enhancements resulted in a sentence of over 20 years (§1385, subd. (c)(2)(C)); (3) "[t]he current offense [was] connected to prior victimization or childhood trauma" (§1385, subd. (c)(2)(E)); and (4) "[t]he enhancement [was] based on a prior conviction that [was] over five years old" (§1385, subd. (c)(2)(H)). Appellant added that although he was not a juvenile at the time he committed the robbery which qualified for the prior serious felony enhancement, he was only 18 years and 5 months old. Had he been just six months younger when he committed that crime, he argued, that circumstance would weigh heavily in favor of

dismissing the prior serious felony enhancement under section 1385, subdivision (c)(2)(G).

In support of resentencing, appellant also submitted a statement in mitigation, which included numerous letters of support, a job offer from a café in Oregon, a relapse prevention plan, and the 2020 application packet for commutation of his sentence.

The trial court conducted the resentencing hearing on May 22, 2023. The court stated it had read appellant's statement of mitigation and his CDCR file. After the court vacated the previous sentence, defense counsel and the prosecutor submitted, and appellant made a statement to the court expressing remorse for his choices and gratitude for his appearance in court.

The court stated it was troubled by two representations in appellant's mitigation materials. The first was appellant's statement in the commutation packet that his father had been absent as a role model, which seemed to conflict with the letters from family members that stated appellant and his father had a good relationship and described appellant's father as a loving dad who was always proud of his children. Defense counsel responded to the apparent conflict by pointing out that "both things could be true." What others observed about appellant's father and his relationship with his children could be "completely different" from the way the father had treated appellant in private. The court also questioned the relevance of appellant's purported job offer from an employer in Oregon in light of the fact that if appellant were paroled, he would have to be supervised in California for at least three years. Defense counsel countered that the job offer showed appellant could be a contributing

member of society upon his release, a point on which the court agreed.

After declaring it had reviewed the case in its entirety, the trial court "decline[d] to strike the prior 211 . . . strike and the weapon enhancement," noting that the prior strike was less than 10 years old at the time of the attempted murders.

Finding "no basis to strike the gun enhancement," the court explained, "[Appellant], in cold blood, shot the back of unarmed male Blacks after echoing the famous mating call, 'Where are you from?' Moreover, after shooting both of them, he chased the most vulnerable victim, the one that got shot with buckshot in the back, to attempt to inflict further injuries. So there is no justification to shoot those unprovoked victims."

The trial court then declared that in the exercise of its discretion, it would decline to strike the five-year "nickel" enhancement under section 667, subdivision (a)(1). The court also found consecutive terms were warranted because the attempted murders involved multiple victims. Finally, the court struck the section 667.5, subdivision (b) prior prison term enhancements in accordance with Senate Bill No. 483. The court then imposed a sentence of 53 years to life plus 14 years as follows:

—On count 1, seven years to life, doubled to 14 years to life for the prior strike (§ 1170.12, subd. (a)–(d)), plus a consecutive midterm of four years for the section 12022.5, subdivision (a) gun enhancement, and another consecutive five-year term for the section 667, subdivision (a)(1) enhancement;

—On count 2, a consecutive term of seven years to life, doubled to 14 years to life for the prior strike (§ 1170.12, subd. (a)–(d)), plus a consecutive term of 25 years to life for the section

12022.53, subdivision (d) gun enhancement, and another consecutive five-year term for the section 667, subdivision (a)(1) enhancement.

Before pronouncing the total sentence, the trial court noted appellant's prison records reflected that on April 19, 2020, after his commutation application was denied, "he was found guilty as charged of disrespecting or potentially creating violence or disruption in the prison system." Therefore, the court concluded, "he is not fully recovered and rehabilitated at this time."

## B. *Applicable law*

Effective January 1, 2018, Senate Bill No. 620 amended sections 12022.5 and 12022.53 to permit a trial court, in the interest of justice pursuant to section 1385, to strike or dismiss a personal gun use enhancement required to be imposed under those sections. (§§ 12022.5, subd. (c), 12022.53, subd. (h); *People v. Tirado* (2022) 12 Cal.5th 688, 696 (*Tirado*).) Courts have recognized this change in the law allows a trial court, after striking or dismissing a 25-year to life enhancement under section 12022.53, subdivision (d), to impose a lesser included, uncharged enhancement authorized under section 12022.53, subdivision (b) or (c) or under a law other than section 12022.53, as long as the facts supporting such an enhancement have been alleged and found true. (*People v. McDavid* (2024) 15 Cal.5th 1015, 1020–1021, 1030 (*McDavid*); *Tirado*, at pp. 696–697, 700.)

A year later, the Legislature amended sections 667, subdivision (a) and 1385, subdivision (b) "to permit a trial court to exercise discretion to strike or dismiss prior serious felony enhancements [imposed under section 667, subdivision (a)(1)] 'in the furtherance of justice.' " (*People v. Morelos* (2022) 13 Cal.5th

10

722, 769; § 1385, subd. (b)(1), as amended by Stats. 2018, ch. 1013, § 2, eff. Jan. 1, 2019.)

Effective January 1, 2022, Senate Bill No. 81 added subdivision (c) to section 1385 to provide:  "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."  (§ 1385, subd. (c)(1).)  "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."[4]  (§ 1385, subd. (c)(2); see *People v. Sek* (2022) 74

---

[4] Section 1385, subdivision (c)(2) identifies nine mitigating circumstances in subparagraphs (A) through (I):

"(A) Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of Section 745.

"(B) Multiple enhancements are alleged in a single case.  In this instance, all enhancements beyond a single enhancement shall be dismissed.

"(C) The application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed.

"(D) The current offense is connected to mental illness.

Cal.App.5th 657, 674 [Sen. Bill No. 81 "amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements . . . in the interest of justice"].) The statute specifically defines "endanger public safety" to mean "there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2); Stats. 2021, ch. 721.)

C. ***The trial court abused its discretion by failing to make any finding that dismissal of the enhancements would endanger public safety, and then failing to consider the applicable mitigating circumstances under section 1385, subdivision (c)(2)***

Appellant contends that two[5] of the mitigating circumstances enumerated in section 1385, subdivision (c)(2)

---

"(E) The current offense is connected to prior victimization or childhood trauma.

"(F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5.

"(G) The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case.

"(H) The enhancement is based on a prior conviction that is over five years old.

"(I) Though a firearm was used in the current offense, it was inoperable or unloaded."

[5] Appellant also asserts that the mitigating circumstance set forth in section 1385, subdivision (c)(2)(A) requires dismissal of the enhancements:  appellant is Black, and imposition of the

weighed greatly in favor of the dismissal of the section 12022.53, subdivision (d) firearm enhancement or imposition of a lesser included firearm enhancement in this case:  (1) four sentencing enhancements were alleged and imposed in this case (§ 1385, subd. (c)(2)(B)); and (2) the application of the firearm enhancement would result in a "sentence over [20] years" (§ 1385, subd. (c)(2)(C)).  Appellant further asserts that these mitigating circumstances plus the fact that the enhancement under section 667, subdivision (a)(1) was based on a prior conviction that was over five years old at the time of the original sentence weighed greatly in favor of dismissal of the two five-year prior serious felony enhancements.  He contends the trial court failed to even consider, much less " 'afford great weight' " to any of these mitigating circumstances, and it made no finding that dismissal of any of the enhancements would endanger public safety.  We conclude that the trial court abused its discretion in failing to make a specific finding that dismissal of any enhancements would pose a danger to public safety.  In the absence of such a finding, the trial court erred in failing to consider the applicable mitigating circumstances under section 1385, subdivision (c)(2).

---

enhancement had a discriminatory racial impact as described in paragraph (4) of subdivision (a) of section 745.  Appellant did not raise this claim in the trial court, and his opening brief contains no argument beyond a bare assertion.  Rather, appellant attempts to support this claim with argument for the first time on appeal in his reply brief.  His assertion that imposition of any of the enhancements had a discriminatory racial impact is thus forfeited.  (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 408 [arguments made for the first time in a reply brief are forfeited].)

We independently review questions regarding the statutory interpretation of section 1385.  (*John v. Superior Court* (2016) 63 Cal.4th 91, 95 [questions of statutory construction reviewed de novo].)  In *People v. Walker* (2022) 86 Cal.App.5th 386, review granted March 22, 2023, S278309, we considered the words of the Legislature's mandate in section 1385, subdivision (c)(2), that the presence of any of the mitigating circumstances enumerated in subparagraphs (A) through (I) "must be 'afford[ed] *great weight*' and '*weighs greatly* in favor of dismissing the enhancement . . . *unless* the court finds that dismissal of the enhancement would endanger public safety." (*Walker*, at p. 398.)  Our examination led us to conclude that "[i]n the context of section 1385, . . . the term 'great weight' places a thumb on the scale that balances the mitigating circumstances favoring dismissal against whether dismissal would endanger public safety, and tips that balance in favor of dismissal unless rebutted by the court's finding that dismissal would endanger public safety." (*Walker*, at pp. 399–400.)  In other words, a trial court's finding that one or more mitigating circumstances exist does not automatically require dismissal of an enhancement.  Rather, the "shall be dismissed" language in section 1385, subdivision (c)(2), subparagraphs (B) and (C), "applies only if the court does *not* find that dismissal of the enhancement would endanger public safety." (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 296 (*Mendoza*); *Walker, supra,* 86 Cal.App.5th at p. 397, rev.gr.)  Indeed, "if the court finds that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances" under section 1385, subdivision (c)(2), subparagraphs (A) through (I).  (*Mendoza*, at p. 296.)

14

We review the trial court's decision not to strike a sentence enhancement under section 1385 for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 373–374.)  A defendant is "entitled to sentencing decisions made through the exercise of informed discretion.  [Citation.]  A court acting while unaware of the full scope of its discretion is deemed to have abused it." (*McDavid*, *supra,* 15 Cal.5th at p. 1023; *Tirado, supra*, 12 Cal.5th at p. 694.)  An abuse of discretion may occur where the trial court is not aware of its discretion, considers impermissible factors, fails to consider relevant factors, or where the decision is so irrational or arbitrary that no reasonable person could agree with it.  (*Carmony*, at pp. 377–378.)

The trial court in this case made no finding that dismissal of any enhancement—with a resultingly shorter sentence—would endanger public safety.  And in declining to dismiss any of the enhancements, the court also gave no indication that it had considered the mitigating circumstances identified in appellant's motion for full sentencing.  Rather, finding "no basis to strike the gun enhancement," the court misstated appellant's role in the crime:  "[Appellant], in cold blood, shot the back of [the] unarmed [victims] after echoing the famous mating call, 'Where are you from?'  Moreover, after shooting both of them, he chased the most vulnerable victim, the one that got shot with buckshot in the back, to attempt to inflict further injuries.  So there is no justification to shoot those unprovoked victims."  The court gave no reason at all for declining to dismiss the five-year enhancements under section 667, subdivision (a)(1).

Not only did the trial court get the underlying facts completely wrong as they concerned appellant's actions,[6] but by focusing on the facts of the crime, the court applied an erroneous legal standard to the question of whether dismissal of the enhancement would endanger public safety.

"Determining whether resentencing a defendant poses an unreasonable risk of danger to society is necessarily a forward-looking inquiry. When determining whether resentencing poses an unreasonable risk of danger, the trial court must look to when a defendant would be released if the petition is granted and the defendant is resentenced. A defendant who would obtain immediate release if the petition is granted poses a different

---

[6] The probation report in this case reflects the same underlying facts of the crime as our unpublished decision in appellant's direct appeal from his conviction:

"On 1-18-2011, the two victims . . . were walking past the front of a large apartment complex. A vehicle stopped in front of the complex and the passenger McConnell [appellant] and the unknown driver stepped out of the vehicle and asked the victims where they were from, meaning gang/neighborhood. The two victims turned to run and [appellant] chased one of the victims [whom] he managed to shoot through the lower back area. The driver, armed with a shotgun chased the other victim. The driver saw his victim hiding behind a tree and fired at him. The victim was partially struck, but was able to run a short distance before getting caught in a fence. While he was struggling to get through the fence, the driver fired the shotgun riddling him with pellet holes. The force of the shotgun pellets pushed the victim through the fence. The shotgun used in the shooting was found at [appellant's] residence along with .22 caliber bullets. The .22 caliber handgun used by [appellant] was never found. (The above information was obtained verbally from the DA in this case.)"

16

potential danger to society than a defendant who could be released only in his or her 70's." (*People v. Williams* (2018) 19 Cal.App.5th 1057, 1063.) *Williams* concluded that a "trial court's failure to consider when, if ever, [a] defendant would be release if the [resentencing] petition was granted" constituted an abuse of discretion under section 1170.126, subdivision (g). (*Id.* at p. 1064.)

Here, the trial court's reference to the underlying facts of the crime to support its refusal to dismiss or reduce the enhancements in this case suggests not a forward-looking inquiry, but one that relies on the immutable facts of the past to determine present dangerousness. And while present dangerousness is an appropriate factor to consider, "a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence. A currently dangerous defendant who will be released from prison within a short time frame might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly." (*People v. Gonzalez* (June 27, 2024, No. D082058) __ Cal.App.5th __ [2024 Cal.App. Lexis 409, at *16–*17] (*Gonzalez*); see *Mendoza, supra*, 88 Cal.App.5th at p. 299 [affirming trial court's finding of danger to the public under § 1385, subd. (c)(2) where " 'dismissal of the enhancement would result in a sentence of less than six years in prison, which would require [the defendant's] immediate release' "].)

The record here contains no indication that future dangerousness entered the trial court's consideration at all. Even if the court had dismissed the firearm enhancement under section 12022.53, subdivision (d) as well as the five-year prior

17

serious felony enhancements, appellant would not be subject to release any time soon—he would still be serving a term of 40 years to life, with no prospect for release from prison until he is 67 years old. Even then, appellant's release would be "contingent on review by the Board of Parole Hearings . . . who will have the opportunity to assess [appellant's] dangerousness at that time." (*Gonzalez, supra,* __ Cal.App.5th __ [2024 Cal.App. Lexis 409, at *17].)

The Attorney General argues the general rule that "where a statement of reasons is not required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order." (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; *People v. Myers* (1999) 69 Cal.App.4th 305, 310 [in the absence of an affirmative record to the contrary, a court is presumed to have considered all of the relevant factors in the exercise of its discretion].) But the record here is not silent. The trial court's findings affirmatively show that the court was focused on whether appellant has been rehabilitated and *currently* poses a danger to public safety rather than considering whether appellant's eventual release—if the enhancements were dismissed—would endanger the public.

We therefore conclude that the trial court abused its discretion by applying an erroneous legal standard, failing to consider relevant mitigating factors as mandated by the Legislature, and relying on a materially incorrect account of appellant's role and actions during the offense to find his release would pose a danger to public safety. Because even a full dismissal of the section 12022.53, subdivision (d) gun

enhancement[7] and the two five-year prior serious felony enhancements would result in a potential release from prison well into the future when appellant is nearly 70 years old, and appellant's eventual release will be subject to review by the Board of Parole Hearings, it is conceivable the trial court would exercise its discretion under section 1385, subdivision (c)(2) differently if it did not limit its consideration to appellant's current dangerousness.

Accordingly, we find the trial court's error to be prejudicial, requiring remand for resentencing to afford the trial court the opportunity to consider whether dismissal of any enhancement would endanger public safety at the time of appellant's eventual release based on the resultingly shorter sentence. Should the court find dismissal of the enhancements would pose no danger to the public, it must then consider the applicability of the mitigating circumstances enumerated in section 1385, subdivision (c)(2), subparagraphs (A) through (I). We express no view on how the trial court should exercise its discretion on remand.

## DISPOSITION

The sentence is vacated, and the matter remanded to the trial court with directions to reconsider the sentence under Penal

---

[7] Dismissal of the section 12022.53, subdivision (d) enhancement is not the trial court's only option. After striking the enhancement, the court retains discretion to impose a lesser included enhancement under subdivision (b) or (c) of section 12022.53, or a lesser included, uncharged enhancement under a different law. (*McDavid, supra,* 15 Cal.5th at p. 1030.)

Code section 1385, as amended by Senate Bill No. 81.  In all other respects the judgment is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



CHAVEZ, J.